UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

```
_____
                        )
JOSEPH A. PULEIO,       )
          Petitioner,   )
                        )
     v.                 )    CIVIL ACTION
                        )    NO. 85-2023-S
GEORGE A. VOSE, JR.,    )
          Respondent.   )
_____ )
```

## PETITIONER'S MEMORANDUM IN SUPPORT OF HIS

## PETITION FOR A WRIT OF HABEAS CORPUS

### I.  FACTS AND PROCEDURAL BACKGROUND

On March 12, 1981, the petitioner, Joseph A. Puleio, was convicted in the Massachusetts Superior Court of murder.

Sharon Snow died on the evening of June 25, 1980, as the result of a gunshot wound. (Tr. 921-923). Snow had been standing nearby during a sudden quarrel, outside the Pinederosa Bar, involving Wayne Subatch and his friends, Richard Pitts and Philip Ricci, on one side and Richard Puleio and his brother, the petitioner, on the other side. During the quarrel, Subatch swore and announced that he had been (a prisoner) in Walpole (state prison) and that he had something that would take care of Richard Puleio. (Tr. 375, 575, 603-4, 662-7, 709, 785-6, 822-3, 1353-55, 1381-82, 1521-24). All of the participants in this quarrel had been drinking. (Tr. 121-22, 372-75, 455, 574,

ATTACHMENT

"1"

Wayne Subatch testified that both the petitioner and his brother had beards, and that, "everyone looks alike with a beard," (Tr. 463) but that the petitioner fired the gun. (Tr. 397-98). He further stated that while it was dark, he saw no flash or smoke coming from the gun. (Tr. 495, 509-10). He also stated that he could not be sure who the person that left on the motorcycle was the same person that shot at him because he could not see the person's face. (Tr. 506-07). Other witnesses were unable to identify the petitioner as the one who fired the gun. (Tr. 610-11, 817, 849-51).

Jacqueline LaMothe, the bartender, testified that throughout the evening of June 25, 1980, Bonnie Eaton, the girlfriend of Richard Puleio, the petitioner's brother, bought eight to ten beers for Subatch, Pitts and Ricci and that Eaton was hanging on Pitts hugging and kissing him. (Tr. 148-49). Other witnesses gave similar testimony. (Tr. 452-55, 572-74, 600-01, 698). Although Eaton never testified at trial, the trial judge allowed LaMothe to testify, over petitioner's repeated objections, that after she asked the question "who shot the gun," and "nobody answered me," she heard Eaton respond "Joe Puleio." (Tr. 81-87). However, Bonnie Eaton, who did not testify at trial, indicated she was inside the bar at the time of the shooting in a statement made to the police. (a copy is attached hereto). A number of witnesses testified that Eaton was not outside when Sharon Snow was shot. (Statement of Bonnie Eaton to Sgt. Michael A. Cronin, Amesbury police, June 26, 1980; Tr. 702, 1032-33, 1047-48, 1408, 1420, 1521).

-3-

II.    BY FAILING TO INSTRUCT ON THE ESSENTIAL ELEMENT OF
       MALICE AFORETHOUGHT, THE TRIAL COURT VIOLATED THE
       PETITIONER'S DUE PROCESS RIGHTS.

   A.    <u>Standing Alone The Language of the Instruction is
         Unconstitutional</u>.

     It is axiomatic that the Due Process Clause of the

Fourteenth Amendment requires the Commonwealth of Massachusetts

in a criminal prosecution to prove beyond a reasonable doubt

every essential element of the crime with which it has charged

a defendant.  <u>In re Winship</u>, 397 U. S. 358, 364 (1970).  It is

clear under Massachusetts law whether the crime of murder has

been committed requires a showing that there was an unlawful

homicide committed with malice aforethought.  See Mass. Gen.

Laws c. 277, § 39; <u>Commonwealth v. Campbell</u>, 375 Mass. 308, 312

(1978).  In the instant case, there was no instruction to the

jury defining for them the meaning of malice aforethought.

     The issue of whether an accused acted with malice

aforethought is historically the "single most important" factor

in determining whether a murder has been committed.  See, e.g.,

<u>Mullaney v. Wilbur</u>, 421 U. S. 584, 696 (1974).  When the intent

of the accused is an element of the crime, its existence is a

jury issue.  Cf. <u>Morrisette v. United States</u>, 342 U. S. 246,

274 (1952).  The issue before this Court is whether the trial

judge's instruction to the jury had the effect of relieving the

Commonwealth of its burden of proof on the critical issue of

whether the homicide was committed with malice aforethought.

Stated another way, the question is whether the instruction

If a defendant has an unexcused intent to injure
somebody, not necessarily to kill, but to injure
somebody, under such circumstances known to the
defendant that common experience shows to present a
plain and strong likelihood that death will follow the
defendant's contemplated act, and death does result,
then that person, that defendant would be guilty of
murder in the second degree.  That is to say, if there
is an intent to injure under circumstances when in
human experience there is a plain and strong likeli-
hood that the injury will result in death, and death
does result, then that is murder in the second
degree.  If instead of merely intending to injure the
person, the defendant intended to kill the person, and
death does result, that is the next highest step, that
is, murder in the first degree.  The difference
between murder in the first degree and murder in the
second degree is that, with respect to murder in the
first degree, there is an intent to kill, whereas with
respect to murder in the second degree, there is an
intent only to injure.  (Tr. 1679-1680).

If you are not convinced beyond a reasonable
doubt that the defendant fired the pistol, you will
return a verdict of not guilty.  <u>If you are convinced
beyond a reasonable doubt that the defendant fired the
pistol intending to kill Wayne Subatch, you will
return a verdict of guilty of murder in the first
degree</u>.  If you are convinced beyond a reasonable
doubt that the defendant fired the pistol intending to
injure Mr. Subatch, in such circumstances known to the
defendant that, according to common experience, there
was a plain and strong likelihood that death would
follow the firing, then even thought you are not
convinced beyond a reasonable doubt that the defendant
intended to kill Wayne Subatch, you will return a
verdict of guilty of murder in the second degree.
Finally, if you are convinced beyond a reasonable
doubt that the defendant fired the pistol not
intending to injure Mr. Subatch, but for any other
purpose, and you find beyond a reasonable doubt that a
reasonable person in the defendant's position would
have realized that the firing of the pistol would
involve a high degree of likelihood that the bullet
would strike somebody, then you would return a verdict
of guilty of manslaughter

(emphasis added).  (Tr. 1682-1683).

Wayne Subatch, or stated another way, without finding that the

petitioner acted with malice aforethought.[2]  When the trial

court instructed the jury:

> "[i]f you are convinced beyond a reasonable doubt that
> the defendant fired the pistol intending to kill Wayne
> Subatch, you will return a verdict of guilty of murder
> in the first degree,"

it commanded the jury to find the petitioner guilty upon proof

of only one of the predicate facts necessary for the crime of

murder.  Nothing in the jury instructions explains what is nec-

essary to find that the petitioner acted with malice

aforethought.  Moreover, and more importantly, nothing in the

instruction defines for the jury just what constitutes malice

aforethought.

The language quoted above is clearly erroneous because it

directs the jury to find the petitioner guilty of murder by

finding only one element of the mens rea, i.e., that there was

an intent to kill.[3]  The jurors were not told that there are

---

[2]Although the judge instructed the jury on deliberate
premeditation, premeditation is not an element of murder in
Massachusetts.  Premeditation is only an element of the degree
of murder.  See Mass. Gen. L. c. 265, §1.  Before a jury can
consider the degree of murder, it has to find that there was in
fact a murder.  See Commonwealth v. Puleio, 394 Mass. 101, 111
(1985).  (Nolan, J., dissenting).  There is a very real danger
that in this case the jury confused malice aforethought and
premeditation.  See Guthrie v. Warden, Maryland Penitentiary,
518 F. Supp. 546, 554 (D. Md. 1981) and infra at page 15.

[3]In its affirmance of the petitioner's conviction, the
Massachusetts Supreme Judicial Court found that the jury in-
struction was erroneous.  Commonwealth v. Puleio, 394 Mass.
Mass. 101, 107 (1985).

degree) murder if it found that the petitioner fired the pistol
intending to kill Subutch, a reasonable juror could have
thought that, although the trial judge read the statute that
defined murder as the killing of another human being with mal-
ice aforethought, all that was required to convict the peti-
tioner of murder was to find that the petitioner intended to
kill.  Malice aforethought is a concept with a precise meaning
in the law, Commonwealth v. Campbell, 376 Mass. 338, 345
(1978); those untrained or uninstructed in the law would not
know its legal meaning, and therefore the failure to define
malice aforethought was a critical error.  See, e.g.,
Commonwealth v. Niziolek, 380 Mass. 513 (1980).

The language used and the language omitted by the trial
judge operated to create a conclusive presumption that the
homicide that was committed was committed with malice
aforethought.  Assuming arguendo that the Commonwealth met its
burden of establishing that there was an intent to kill or to
injure, the instruction relieved it of its burden to show that
the homicide occurred without excuse, justification or
palliation.  More importantly, by omitting to explain to the
jury just what constitutes malice aforethought, the trial court
deprived the petitioner of his constitutional right to have the
jury consider whether the evidence adduced at trial demon-
strated beyond a reasonable doubt that he had committed the

Court can find that standing alone, the jury instruction on the
issue of malice violated the petitioner's Due Process rights.

B.  THE JURY INSTRUCTIONS TAKEN AS A WHOLE FAIL TO SATISFY
    THE CONSTITUTIONAL REQUIREMENTS OF DUE PROCESS.

In _Francis v. Franklin_, _supra_, the United States Supreme
Court recently upheld the reversal of a conviction for malice
murder because it found that the jury instructions on the cru-
cial element of intent violated the defendant's due process
rights.  In _Franklin_, the Court reiterated its two-prong stan-
dard used to test the constitutional validity of jury instruc-
tions:

> The Court today holds that contradictory instructions
> as to intent--one of which imparts to the jury an un-
> constitutional understanding of the allocation of
> burdens of persuasion--create a reasonable likelihood
> that a juror understood the instructions in an uncon-
> stitutional manner, unless other language in the
> charge explains the infirm language sufficiently to
> eliminate this possibility.  If such a reasonable pos-
> sibility of an unconstitutional understanding exists,
> "we have no way of knowing that [the defendant] was
> not convicted on the basis of the unconstitutional
> instruction.  _Sandstrom_, 442 U. S., at 526.  For this
> reason, it has been settled law since _Stromburg v.
> California_, 283 U. S.  359 (1931), that when there
> exists a reasonable possibility that the jury relied
> on an unconstitutional understanding of the law in
> reaching a guilty verdict, that verdict must be set
> aside.  See _Leary v. United States_, 395 U. S. 6, 31-32
> (1969); _Bachellar v. Maryland_, 397 U. S. 564, 571
> (1970).

_Francis v. Franklin_, _supra_, at 4499-50 n.8 (emphasis added).

The erroneous instruction in the instant case removed from
the jury any consideration of whether the petitioner acted with
malice aforethought by failing to define or explain this cru-
cial element of the offense.  As discussed _supra_, the failure

-13-

instruction is not per se sufficient to explain the requisite
mental state necessary to convict an accused of murder.   In
Massachusetts, the mens rea for murder is malice aforethought.
See Mass. Gen. Laws c. 277, § 39.   To find one guilty of first
or second degree murder requires a finding of malice
aforethought, consisting of the intent to kill or to injure
coupled with the absence of justification, excuse or
palliation.   Malice aforethought is the crucial element of the
crime of murder.   Commonwealth v. McGuirk, supra at 344.

The Commonwealth also relied on the trial court's instruc-
tion on premeditation as evidence that the jury was properly
instructed.   As noted by the dissenting judges in the Supreme
Judicial Court's opinion, premeditation defines only the degree
of murder and not whether there has been a murder.
Commonwealth v. Puleio, supra, at 111 (Nolan & Liacos, JJ.,
dissenting).   In this case, there is a "real danger" that a
juror could confuse the relevance of the instruction on
premeditation relating to the degree of the offense with the
significance of finding that the offense was committed with
malice aforethought.   Compare Guthrie v. Warden, Maryland
Penitentiary, 518 F. Supp. 546, 554 (D. Md. 1981), Patterson v.
New York, 432 U.S. 197 (1977) and Mullaney v. Wilbur, 421 U.S.
684 (1975).   Where no proper definition of the crime is given
to the jury, there exists a reasonable possibility that the
jury focused its analysis on the wrong question and failed to
consider whether the evidence established the elements of the
crime beyond a reasonable doubt.

Complicating this case for the jurors is the fact that the Commonwealth relied on the principle of transferred intent. The trial court instructed the jury:

> "[i]f I aim at a person there but hit a person in the other direction the law assumes that I intended to hit the second person. That is what transferred intent means. Now observe that there has to be a proof of intent to injure the first person before we even get to the question of the second person." (emphasis added). (Tr. 1675).

The language used by the trial judge that the "law assumes that I intended to hit the second person" relieves the Commonwealth of its burden to prove every element of the crime beyond a reasonable doubt. Sandstrom v. Montana, supra, at 524. Because the homicide before the jury involved a bystander, Sharon Snow, a reasonable juror could have understood that the instruction on what was necessary to convict the petitioner of murder (either first or second degree), the assumption regarding transferred intent and the instruction) premedifion when taken together required a finding of only the intent to injure Subatch to convict the petitioner of murder. Cf. Sandstrom v. Montana, supra, Guthrie v. Warden, Maryland Penitentiary, supra. If there exists a reasonable possibility that the jury had an unconstitutional understanding of the law based on an erroneous jury instruction, this Court must grant the petitioner his relief. See Stromburg v. California, 283 U.S. 359 (1931), Leary v. United States, 395 U.S. 6, 32 (1969). This Court must find that the instruction taken as a whole does not comport with the petitioner's rights guaranteed by the Due Process Clause.

-17-

any malice aforethought.  For instance, there was testimony
that the gun came up like lightening (Tr. 458-88), suggesting
an accidental discharge and, suggesting that the use of the gun
was only to frighten; that veiled threats were hurled between
rivals (Tr. 375, 664); suggesting that the events which
transpired occurred with only an intent to intimidate and not
to injure; and that after the testimony of all the other prose-
cution witnesses was considered, the nub of the prosecutor's
case rested on the hearsay statement of Bonnie Eaton,
suggesting that the evidence offered by the prosecution as to
the events surrounding the killing was insufficient beyond a
reasonable doubt to convict the petitioner of murder.
Furthermore, the petitioner testified on his own behalf, denied
the killing and never conceded the issue of intent.  While the
issue of identification was contested by the petitioner, the
issue of whether he acted with malice aforethought was never
conceded.  In fact, defense counsel requested the instruction
on the issue of malice aforethought.  Petitioner's defense in
no way precludes the issue of whether the Commonwealth estab-
lished proof of malice aforethought.

In Connecticut v. Johnson, 460 U.S. 73, 87 (1982), the
Supreme Court stated that "a defendant may in some cases admit
that the act alleged by the prosecution was intentional, there-
by sufficiently reducing the likelihood that the jury applied
the erroneous instruction..."  Id.  The Johnson Court specifi-
cally only referred to defenses such as alibi, insanity or

-19-

weapon is a clear attempt to offer to the jury circumstances which would, if believed, mitigate the killing.

Although the petitioner's defense sought to establish that Subatch and not he did the shooting, it did not preclude, the assertion that the petitioner did not act with malice aforethought if the jury chose to believe the prosecution witnesses. This Court can find that it was not inconsistent for the petitioner to try and establish that another was responsible for the crime and to contest the issue of whether he acted with malice aforethought.

B.  With Malice Aforethought A Contested Issue At Trial, The
Jury Instruction Cannot Be Deemed Harmless Error.

In Chapman v. California, the Supreme Court stated that an error is not harmless if there exists a reasonable possibility that the error complained of might have contributed to the petitioner's conviction. 386 U.S. 18, 23 (1967). Accord United States v. Christian, 571 F.2d 64, 69-70 (1st Cir. 1978), United States v. Harrigan, supra. Furthermore, if there is a reasonable possibility that the jury had an unconstitutional understanding of the law in reaching a guilty verdict, the verdict must be reversed. Francis v. Franklin supra, at 4450 n.8 and cases cited. In this context, the First Circuit has recently stated:

> "[o]mitting an element as critical as intent from a
> jury charge, especially when that element is required
> by state law would seem to be a harmful error of con-
> stitutional dimensions in many situations..."

the finding that the petitioner lacked the requisite mental state even if the jury chose to believe the version of the events by the prosecution witnesses. There was evidence that the gun was drawn like lightening and immediately discharged during an argument over a girlfriend where everyone had been drinking. The erroneous instruction eliminated from the jury's deliberations any consideration of whether this evidence was sufficient to mitigate the mens rea.[7]

In this case, the failure to define or explain malice aforethought is so basic an error that there is more than a reasonable possibility that it contributed to the petitioner's conviction. Cf. Chapman v. California, 386 U. S. at 23. This is "the type of case in which the erroneous instruction might have made the difference between acquittal and conviction." United States v. Harrigan, supra, at 863. The failure to define malice aforethought acted to relieve the Commonwealth of its burden of proving the crucial element of the offense. In this situation, this Court cannot find the error to be harmless.

---

[7]As the Court noted in Connecticut v. Johnson, "If the jury may have failed to consider evidence of intent, a reviewing court cannot hold that the error did not contribute to the verdict. The fact that the reviewing court may view the evidence of intent as overwhelming is then simply irrelevant. To allow a reviewing court to perform the jury's function of evaluating the evidence of intent, when the jury may never have performed that function would give too much weight to society's interest in punishing the guilty and too little weight to the method by which decisions of guilt are to be made 460 U.S. 73, 86 (1982).

Franklin, 53 U.S.L.W. 4495 (1985).  This Court can find that it is never harmless error to instruct a jury erroneously on an essential element of an offense.  Compare Jackson v. Virginia, 443 U.S. 307, 320 (1979), Bollenbach v. United States, 326 U.S. 607 (1946).

IV.  THE PETITIONER'S SIXTH AMENDMENT RIGHT TO CONFRONT THE WITNESSES AGAINST HIM WAS VIOLATED BY THE INTRODUCTION OF HEARSAY TESTIMONY.

A.  The Evidence Does Not Qualify For Admission As an Excited Utterance.

Before admitting evidence under the excited utterance exception, a judge must make a preliminary finding 1) that there was a startling event; 2) that the declarant's statement relates to that event; and 3) that the statement was made while the declarant was still under the exciting influence of the event.  See Correira v. Boston Motor Tours, Inc., 270 Mass. 88, 169 N.E. 775 (1930); Rocco v. Boston-Leader, Inc., 340 Mass. 195, 163 N.E. 2d 157 (1960).

At trial in the instant case, the bartender at the Pinederosa, Jacqueline LaMothe, testified that she heard a shot and then a scream while she was in the bar.  Subsequently, someone entered the bar and requested an ambulance.  After LaMothe called an ambulance service, she went outside and inquired about the gunshot.  According to her testimony, no one responded to her initial questioning.  Later LaMothe stated that Bonnie Eaton said the petitioner's name.  (Tr. at 81-84).

-25-

Petitioner contends that the events of June 25, 1980 cannot reasonably be found to have negated the possibilty of premeditation or fabrication on Miss Eaton's part. <u>See</u> <u>Blake v. Springfield St. Ry. Co.</u>, 6 Mass. App. 553, 379 N.E. 2d 1112 (1978). There are two reasons for questioning the qualification of the testimony under the excited utterance exception; personal bias and a lack of spontaneity.

Testimony at trial showed that Bonnie Eaton was the girlfriend of the petitioner's brother at the time of the shooting (Tr. 47). Yet when petitioner and his brother arrived at the bar, Miss Eaton was conversing, hugging and kissing with Wayne Subach and Richard Pitts. (Tr. 50,698).

Petitioner asserts that Miss Eaton's statement was not spontaneous because the statement was made <u>well after</u> the shooting and was made <u>in response to</u> Miss LaMothe's inquiries, rather than as an unprevoked response to a startling event. <u>See</u> <u>Commonwealth v. Hampton</u>, 351 Mass. 447, 450, 221 N.E. 2d 766 (1966) (elicitation of statement by witness' question was an aspect to be considered in determining admissibility); <u>Rocco v. Boston Leader, Inc.</u>, 340 Mass. 195, 196, 163 N.E. 2d 157, (1960) (statement of employee moments after a customer slipped in store held inadmissable because res gestae deemed very limited in duration); <u>Eastman v. Boston & M.R.R.</u>, 165 Mass. 342, 43 N.E. 115 (1896) (statement by injured plaintiff no more than five minutes after incident held inadmissible).



all, was a considered response to questioning some time after the event occurred.  (Tr. at 81-84).[10]

B.    The Prejudicial Effect Of Bonnie Eaton's Testimony Outweighs Its Probative Value.

The court should exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice.  While the trial court's determination is entitled to deference on such matters, there is no indication that the trial judge considered this ground for excluding Miss Eaton's statement.  (Tr. 87).  See generally Commonwealth v. Jackson, 388 Mass. 98 (1983); Commonwealth v. D'Agostino, 344 Mass. 276, 279 (1962).

In this case, an evaluation of the time lag between the event and the response, the probable bias of both Eaton and LaMothe toward petitioner, as well as the perception problems inherent in the testimony which could not be explored through cross examination, must lead to the conclusion that petitioner was sentenced to life imprisonment on questionable testimony that should not have reached the jury.[11]

_____

[10]LaMothe did not state how long it took her to call an ambulance.  She did state that the phone was in a backroom. (Tr. 82-83).  Furthermore, LaMothe admitted that she was "flipped out" by the sight of Sharon Snow, (Tr. 84), and so her recollection of the events could easily have been distorted.

[11]While the confrontation issue is addressed infra, it may be pointed out here that petitioner's inability to question the declarant in the jury's presence deprived him of a critical element of his defense.  Since the record shows that nearly everyone on the scene had been drinking and that the incident took place in a poorly lighted parking lot, (Tr. 122, 128,

(Footnote continued on next page)

399 U.S. 149, 155 (1970). See also McLaughlin v. Vinzant, 522
F.2d 448 (1st Cir. 1975); United States v. Fahey, slip op. (1st
Cir. July 30, 1985).[13]

The Supreme Court has refused, on a number of occasions, to
state generalized rules which would govern the admissibility of
hearsay in light of a criminal defendant's confrontation
rights. See, e.g., Barber v. Page, 390 U.S. 719 (1968).
Instead, the Court has started from the premise that cross-
examination is essential to a fair trial.[14]

Petitioner's right to confront the witnesses against him
may be abridged only where the state is able to demonstrate the
unavailability of the declarant as well as showing that the

---

[13]The cases relied on by the prosecution at trial are in
error on this particular point, in that they mistakenly place
the state rules of evidence above defendant's federal constitu-
tional rights of confrontation and due process. See Dutton v.
Evans, 400 U.S. 74, 105 (Marshall, J., dissenting) (1970)
(defendant's constitutional right of confrontation cannot give
way to state law of evidence, no matter how long established or
recognized the state law); compare Commonwealth v. McLaughlin,
364 Mass. 211, 224; 303 N.E. 2d 338, 346 (1973) (fact that
excited utterance might be admissable under evidence rules
wrongly taken as sign that sixth amendment was inapplicable);
Commonwealth v. Hampton, 351 Mass. 447, 221 N.E. 2d 766, (1966)
(sixth amendment not addressed).

[14]See, e.g. California v. Green, 399 U.S. 149, at 162,
and passim. In Pointer v. Texas the Court quoted Kirby v.
United States, 174 U.S. 47, at 55-56, describing the right of
confrontation as:"[o]ne of the fundamental guarantees of life
and liberty," and a "right long deemed so essential for the due
protection of life and liberty that it is guarded against leg-
islative and judicial action by provisions in the Constitution
of the United States and in the constitutions of most if not of
all the State composing the Union."

Eaton had been involved with the petitioner's brother but on the night of the shooting she had been affectionate with someone else (Tr. 50,149).

In addition, on the night of the incident, petitioner and Jacqueline LaMothe had exchanged angry words over a diamond ring. Petitioner had reason to believe LaMothe had stolen the ring from his home, and he confronted her with this information (Tr. 103, 106-107, 1540).

At the trial, LaMothe's testimony that Eaton had indicated petitioner fired the shot was contradicted directly and little substantiation was offered (Tr. 1420, 459-60). Most importantly, there is no reason to believe that Bonnie Eaton was so excited. In her police statement, Miss Eaton said she thought "it was only a blank and not to worry." An excited state is the keystone of the spontaneous utterance exception to the hearsay rule; without it, there is nothing to insure reliability. Petitioner stood accused by one known to be biased against him, with the accusation related to the jury by a third party who was also hostile to him at least on that particular night. (Tr. 103-107). Counsel could have probed the bias of LaMothe, but extended questioning would not have reached Bonnie Eaton's prejudice and would most likely have reinforced the hearsay in the jury's mind.[16]

---

[16] As quoted in <u>California v. Green</u>, 399 U.S. at 163, the Supreme Court analyzed the similar problem of a co-defendant's confession, used against the defendant but beyond cross-

(Footnote continued on next page)

from where she was.  Her vision may have been shielded by Subatch, Pitts, and Ricci, who were all in front of the door Bonnie told the police she was looking through.  (Tr. 374-76, Statement of Bonnie Eaton, June 26, 1980).

The petitioner was entitled to have Bonnie Eaton make her accusation in the full solemnity of the courtroom, where the threat of perjury sanctions and the moral weight of making a false accusation were fully impressed upon her.  A personal appearance is essential when the evidence is conflicting as to whether the alleged statement was actually made or not. Petitioner's constitutional rights demand that Miss Eaton make the accusation in a courtroom, under oath and in full view of the jury's scrutiny.[17]

Although the Supreme Court has suggested that "firmly-rooted" hearsay exceptions might satisfy the Confrontation Clause, the Court neither defined what firmly rooted means nor did it rely on such an approach in the case in which the remark

---

[17]See Mattox v. United States, 156 U.S. 237, 242 (1859):

> "The Court pointed out that the primary purpose of the Confrontation Clause "was to prevent depositions or ex parte affidavits . . . in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor on the stand and the manner in which he gives his testimony whether he is worthy of belief."

defendants", id., at 1222 n.7 (citing <u>Moore v. United States</u>, 429 U.S 20, 21-22(1976).[19]

The importance of this statement to the prosecution's case cannot be overstated. With witnesses presenting conflicting stories of the events of that night, the prosecution had to rely on the hearsay statement to prove its case. Not only did the prosecution introduce the statement through LaMothe, it repeatedly placed it before the jury through its examination of other witnesses. (See Tr. at 1420.)

The admission of this hearsay evidence was not harmless. The prosecution felt it necessary to rely on this hearsay statement when it had live witnesses. The impact of the hearsay statement on the jury, viewed in light of the conflicting testimony of the other witnesses, is certainly significant, and

---

[19] There appear to be only two cases in the First Circuit which allowed hearsay testimony which was not subject to cross examination at any time. In <u>United States v. Fahey</u>, slip op. (1st Cir. July 30, 1985), the court allowed a co-conspirator's statement in and the appellate court upheld on the grounds that the evidence was insignificant. The court in <u>McLaughlin</u> v. <u>Vinzant</u> allowed the admission of an excited utterance to stand, primarily because there had been no suggestion made to the court that the evidence was unreliable (unlike the present case). The court noted, though, that excited utterances may in fact be lacking in precision. 522 F.2d, 448, 450-51 (1st Cir. 1975).

In other cases in this Circuit addressing the conflict between the hearsay exceptions and the Confrontation Clause, the courts affirmed the necessity of providing some opportunity for cross-examination; <u>Ariza-Ibarra</u>, supra; <u>Robbins v. Small</u>, 371, F.2d 793 (1st Cir. 1967); <u>Clay v. Vose</u>, 599 F. Supp. 1505 (D. Mass. 1984); <u>Flemmi v. Gunter</u>, 410 F.Supp. 1361 (D.Mass. 1976); <u>Williams v. Meachum</u>, 382 F.Supp. 521 (D.Mass. 1974).

the convictions as to whether Subatch was represented by counsel.[22]   Later, during his cross-examination before the jury, the prosecution objected to the impeachment of Subatch by means of his prior criminal record without certified copies of those convictions.  (Tr. 549).  When defense counsel informed the court that his associate was trying to obtain the certified copies, the prosecution informed the court that the defense had several months in which to obtain certified copies. (Tr. 545).  The trial court excluded part of Subatch's record and allowed his impeachment with only a portion of his criminal record.  (Tr. 547).[23]

Petitioner asserts that the trial court's restriction of his impeachment of Subatch violated his rights of confrontation and due process.  Subatch was the key witness the prosecution offered to identify the petitioner as the one who did the

_____

[22]It is unclear whether it is necessary to show representation by or waiver of counsel on the prior convictions of a witness who is not the defendant before he can be impeached with his prior record.  See Baldasar v. Illinois, 446 U.S. 222 (1980), Loper v. Beto, 405 U.S. 473 (1972).  During the voir dire, Subatch denied representation by counsel for three convictions.  (Tr. 427, 429).  Petitioner contends that the Confrontation Clause permits impeachment of witnesses who are not defendants with any prior conviction.  See Davis v. Alaska, infra.

[23]The defense was not permitted to impeach Subatch with his conviction for an assault and battery with a dangerous weapon.  (Tr. 554-55).  The trial court, in fact, during the voir dire stated that Subatch's conviction for the assault and battery with a dangerous weapon would be admissible.  (Tr. 429).

There can be no question that the petitioner was denied effective cross-examination of Subatch.  The exclusion of his record for a crime involving a weapon kept from the jury a crucial piece of evidence for them to consider in evaluating his truthfulness.  This case involved a weapon and Subatch's testimony might have been viewed in a different light had the jury known that Subatch himself had been convicted of a crime involving a weapon.  The denied cross-examination was a constitutional error of the first magnitude to the petitioner, Davis v. Alaska, supra, at 318, which warrants the reversal of his conviction.

Moreover, Petitioner contends that it can never be harmless error to exclude impeachment of a key prosecution witness by means of his prior criminal record.  See Van Arsdall v. State, 486 A. 2d 1 (Del. 1984), cert. granted, 105 S. Ct. 3552, 87 L. Ed. 2d 674, 53 U.S.L.W. 3914 (1985).  Although this Circuit has used a harmless error test to determine whether the exclusion of certain impeachment evidence warrants the reversal of a conviction, Kines v. Butterworth, 669 F. 2d 6, 13 (1st Cir. 1981) citing Chapman v. California, 386 U.S. 18 (1967), petitioner contends that Kines should be limited to its facts.

Kines involved impeachment by prior inconsistent statements which the First Circuit determined would have only been cumulative evidence of the witness' uncertainty and confusion. Kines, supra, at 13.  The instant situation is distinguishable because impeachment by prior criminal convictions is the surest

justice standard does not automatically act as a waiver of the
state's contemporaneous objection rule or avoid the bar of
Wainwright, see Gibson v. Butterworth, 693 F. 2d 16, 17 (1st
Cir. 1982), McCown v. Callahan, 726 F. 2d 1 (1st Cir.) cert.
denied 105 S. Ct. 139, 83 L.Ed. 2d 78 (1984), it has based
those conclusions on the fact that the state court typically
applies state not federal law when conducting its review under
such a standard.

In Jackson v. Amaral, 729 F. 2d 41, 45 (1st Cir. 1984), the
Court stated that the test to determine whether there has been
a waiver of any procedural bar to a collateral review is "the
extent to which the state court relies upon federal rights,
cases and legal principles in conducting its review." Id. The
greater the reliance on federal doctrine, the more likely waiv-
er would be found.

In the instant case, petitioner challenged his conviction
by raising both state and federal due process arguments for the
lack of a proper definition of malice aforethought in the jury
instructions at his appeal before the Supreme Judicial Court.
The facts of this case establish that the court was properly
briefed as to the federal constitutional issue and did, in
fact, consider the issue. In his Supplemental brief to the
Supreme Judicial Court, the petitioner cited to the landmark
cases of Sandstrom, Mullaney v. Wilbur, In re Winship,
Morrissette, v. United States and several lower federal court
decisions for his contention that the instruction (or lack of
instruction) violated his due process rights.

-43-

opinion consists of four pages dealing directly with the malice issue and the entire dissent focused only on whether erroneous instruction deprived the petitioner had been deprived of having the state prove every element beyond a reasonable doubt. Commonwealth v. Puleio, supra, passim.

Moreover, it is clear that the Supreme Judicial Court analyzed petitioner's claim under the federal law for the error in the instruction on transferred intent as it cited Sandstrom in its opinion. Commonwealth v. Puleio, supra, at 109. The circumstances of the homicide and the jury instructions considered as a whole make it very unlikely that the Supreme Judicial Court separated the baby from the bath water in its review of the correctness of the instruction of malice. Accordingly, this court can find that the procedural default was waived by the Supreme Judicial Court to "an extent sufficient to allow [this Court] to undertake collateral review." Jackson v. Amaral, supra, at 44.

B.    Sufficient Cause And Actual Prejudice Exist To Allow
      This Court To Consider Petitioner's Claims.

Petitioner contends, alternatively, that if this Court determines that Wainwright applies to that portion of the instant petition concerning the issue of malice, there is cause and actual prejudice sufficient enough for this Court to entertain the petition.

At the time of trial, petitioner's attorney requested that the trial court instruct on premeditation and malice

viewed to be any sort of tactical decision because: 1) counsel objected at first to the court's instruction and requested that the court define malice aforethought; and 2) the issue of malice aforethought was never conceded by the petitioner.

This failure to object – certainly an error, comports with the other instances of the ineffectiveness of trial counsel, i.e., failure to make an offer of proof concerning the version of Bonnie Eaton's statement given to the police and in the possession of trial counsel and the failure to obtain certified copies of conviction records of the prosecution witness Subatch after having his name as a prosecution witness for several months before trial. When considered in toto, trial counsel's errors may not rise to the magnitude of ineffectiveness as considered in Strickland v. Washington, 104 S. Ct. 2052 (1984), but do suggest that this failure to object is consistent with other omissions and errors. While trial counsel was aware enough to object initially, he was not diligent enough to pursue his objection after the requested instruction.

That the failure to object was not a conscious tactical decision by counsel is also supported by the record. Trial counsel specifically requested an instruction on malice aforethought because the issue was contested.[26] While it is

_____

[26]Unlike the situation in Greco, this is not a case where the trial court gave an instruction concerning malice that was challenged as a presumption which shifted the burden of proof; the error here was much more rudimentary as it is a case with no definition of malice. Compare Greco v. Dickhaut, No. 82-3422-C slip op., (D. Mass. July 14, 1983).

-47-

VII.   CONCLUSION.

    For the foregoing reasons, petitioner requests that this Court grant him his relief.

                    Respectfully submitted,

                    JOSEPH A. PULEIO,

                    By his attorneys,

                    Robert D. Canty
                    James E. Carroll
                    GASTON SNOW & ELY BARTLETT
                    One Federal Street
                    Boston, Massachusetts  02110
                    (617) 426-4600

October 15, 1985

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS


JOSEPH A. PULEIO,
          Petitioner


v.                                          CIVIL ACTION NO.
                                            85-2023-S


GEORGE A VOSE, JR.,
          Respondent


FINDINGS AND RECOMMENDATIONS
ON
PETITION FOR WRIT OF HABEAS CORPUS

MAY 6, 1986


ALEXANDER, M.

     Petitioner, Joseph A. Puleio, seeks habeas corpus relief
pursuant to 28 U.S.C. § 2254.  Petitioner contends that his
state court conviction for first degree murder was obtained in
violation of the constitution.  He asserts three grounds for
relief in his petition:  1) the trial judge violated
petitioner's due process rights when he failed to instruct the
jury on the essential element of malice aforethought;[1] 2)
petitioner's Sixth Amendment right to confront the witnesses
against him was violated by the introduction of hearsay
testimony;[2] and 3) because the trial court restricted the
impeachment of prosecution witness, Wayne Subatch, petitioner's
rights of confrontation and due process were violated.[3]

_____

     [1]Petitioner's Memorandum in Support of his Petition for a
Writ of Habeas Corpus (Pet. Memo.), p. 5.

     [2]Pet. Memo., p. 25.

     [3]Pet. Memo., p. 38.

ATTACHMENT

"2"

-3-

## FACTUAL BACKGROUND

This Court notes that state court findings of fact are entitled to a presumption of correctness under 28 U.S.C. § 2254(d), Sumner v. Mata, 449 U.S. 539, 547 (1981).[6] Accordingly, the facts as presented in Commonwealth v. Puleio, 394 Mass. 101, 102, 474 N.E.2d 1078, 1079-1080 (1985) are included herein:

> On the evening of June 25, 1980, the defendant and his brother, Richard Puleio, arrived at the Pinderosa Bar in Amesbury and found Bonnie Eaton, Richard Puleio's girl friend, socializing with Wayne Subatch and two of Subatch's friends. The defendant spent about thirty to forty-five minutes at the bar and, in that time, had two altercations, during one of which he threatened to "blow [that person's] . . . head right of[f]." Subatch, his friends, and Eaton left the bar, followed closely by the defendant and his brother. An argument ensued, with the defendant and his brother on one side and Subatch on the other. The defendant pulled out a gun, aimed it at Subatch's head, and fired one shot. Subatch ducked. Sharon Ann Snow was standing behind Subatch, and the defendant's bullet struck her in the chest and killed her. The defendant fled from the scene, and the next night a Virginia State trooper arrested him as he was traveling south on Interstate Highway 95. The defendant had shaved his beard and had repainted his motorcycle, and the motorcycle bore a registration plate not assigned to him by the Registry of Motor Vehicles.

## ADMISSION OF HEARSAY TESTIMONY

Petitioner contends that the testimony of Jacqueline LaMothe, the Pinderosa bartender, violated his Sixth Amendment right to confront the witness.

---

[6]Sumner v. Mata, 449 U.S. 539, 550 (1981) further holds that petitioner has the burden "to establish by convincing evidence that the factual determination by the state court was erroneous." Petitioner has not met his burden in this case.

-5-

errors in evidentiary rulings." <u>Allen v. Snow</u>, 635 F.2d 12, 15
(1st Cir. 1980), <u>cert. den.</u>, 451 U.S. 910 (1981); <u>Salemme v.
Ristaino</u>, 587 F.2d 81, 85 (1st Cir. 1978).  Unless the error
deprives a defendant of fundamental fairness in his criminal
trial, <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 642 (1974), the
alleged state court rulings do not reach constitutional
proportions.  <u>Lagasse v. Vestal</u>, 671 F.2d 668, 669 (1st Cir.
1982), <u>cert. den.</u>, 457 U.S. 1112 (1982); <u>Subilosky v. Callahan</u>,
689 F.2d 7, 10 (1st Cir. 1982) <u>cert. den.</u>, 460 U.S. 1090 (1983).

In <u>McLaughlin v. Vinzant</u>, 522 F.2d 448, 450 (1st Cir.
1975), <u>cert. den.</u> 423 U.S. 1037, <u>reh. den.</u>, 423 U.S. 1092
(1975), the Court referred to Justice Stewart's plurality
opinion in <u>Dutton v. Evans</u>, 400 U.S. 74, 86 (1970), stating
that the confrontation clause advances "a practical concern for
the accuracy of the truth-determining process in criminal
trials by assuring that 'the trier of fact [has] a satisfactory
basis for evaluating the truth of the prior statement.'"

Bonnie Eaton was clearly not available to testify.[9]
However, this Court cannot find that the jury did not have a
satisfactory basis for evaluating the truth of Ms. LaMothe's
testimony.  Petitioner's defense counsel fully cross-examined
Ms. LaMothe concerning the utterance and the underlying
incident.  Moreover, it is clear that Bonnie Eaton's statement
occurred shortly after an unquestionably exciting event, the
shooting of a person she knew.

Accordingly, it is recommended that this ground of the
petition for a writ of <u>habeas corpus</u> be denied.

_____

[9]Tr. Vol. II, p. 85.

assault and battery on a police officer and disorderly person.[12]  There is no indication in the trial transcript or in the record before this Court why defense counsel agreed to waive assault and battery with a dangerous weapon, a most serious charge against Wayne Subatch.

Even if a federal court were to sit as a court of error for the state court, which it clearly does not, see, Vanetzian v. Hall, 433 F.Supp. 960, 962-963 (D.Mass. 1977), aff'd 562 F.2d 88 (1st Cir. 1977), this Court would not find constitutional error in the state court ruling.

Petitioner's trial counsel initially waived petitioner's right to impeach Wayne Subatch on his entire criminal record when the certified copies of his criminal record were not obtained prior to trial.  Trial counsel then waived the most serious charge against Wayne Subatch when he agreed to only question Subatch on the convictions for assault and battery on a police officer and disorderly person.

The waiver which occurred prior to the ruling by the trial court substantially erodes the significance of petitioner's constitutional challenge before this Court.  Moreover, the trial court did allow in three convictions which were available to challenge the testimonial reliability and veracity of the witness.

Accordingly, it is recommended that this ground of the petition for a writ of habeas corpus be denied.

THE JURY INSTRUCTION

As the third basis for the petition for writ of habeas corpus, petitioner contends that the trial court failed to

---

[12]Tr., Vol. IV, p. 553.

-9-

Petitioner contends that the erroneous jury instruction violated his right to due process because the instruction "effectively relieved the Commonwealth of its Winship[13] burden by removing from the jury's fact finding process the issue of whether the defendant acted with the requisite mens rea."[14]

Respondent asserts that petitioner waived his right to federal habeas corpus review on this question because he failed to object to the jury charge at trial creating an independent and adequate state ground to support the conviction. Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977). Engle v. Isaac, 456 U.S. 107, 129 (1982).

The First Circuit addressed the impact of Wainwright v. Sykes when a petitioner failed to object to an error by the trial court.

> Wainwright holds that a defendant's failure to object to a claimed judicial error (even one of constitutional dimensions) at a state trial constitutes an adequate and independent state ground sufficient to uphold a conviction against the claim of "federal error" if at least 1) the state in fact has a "contemporaneous objection" rule; 2) the state enforces and does not waive the rule; and 3) the defendant fails to show both "cause" for and "prejudice" from, not having complied with the rule. Where these conditions are present, federal habeas courts typically will not reach the merits of the federal constitutional claim.

McCown v. Callahan, 726 F.2d 1, 3 (1st Cir. 1984), cert. den., ____ U.S. ____, 105 S.Ct. 139 (1984).

---

[13]In re Winship, 397 U.S. 358, 364 (1970).

[14]Pet. Memo., p. 10.

-11-

occurred.[15]

Finally, this Court cannot find the necessary cause and prejudice urged by petitioner.  Petitioner claims that the failure to object to the jury charge concerning malice was inadvertance on the part of his trial counsel.  Petitioner further suggests that inadvertance on the part of trial counsel is sufficient cause for defaulting on the procedural error at trial.

This Court is certainly aware that the Supreme Court has granted certiorari on the same question in Carrier v. Hutto, 724 F.2d 396, 403 (4th Cir. 1983), aff'd, 754 F.2d 520 (4th Cir.), cert. granted sub nom., Sielaff v. Carrier, ____ U.S. ____, 105 S.Ct 3523 (1985).  However, since present cases must be relied upon, petitioner has not stated sufficient cause for failing to object to the instruction on malice.

In Engle v. Isaac, 456 U.S. 107, 134-135 (1982) the Court refused to replace or supplement the cause and prejudice standard with a plain-error rule.  The Court stated:

_____

[15]This Court cannot agree with petitioner's analysis of his decision by the Supreme Judicial Court.  In his memorandum of law at p. 44, petitioner states:

> From its decision, it is clear that the Supreme Judicial Court considered the merits of the constitutional issue on the question of malice raised by the petitioner.  Although it couched its decision in language referring to its review under c. 278, § 33E, the Supreme Judicial Court's conclusion that the error in the jury instructions was harmless beyond a reasonable doubt must be read to refer to the standard of Chapman v. California, 386 U.S. 18 (1967).

-13-

Commonwealth v. Puleio, 394 Mass. 101, 107, 474 N.E. 1078,
1083 (1985). If prejudice was resultant, it could clearly be
said to inure to the detriment of the Commonwealth. However,
Wainwright v. Sykes, 433 U.S. 72 (1977) requires a showing of
both cause and prejudice. Petitioner has not established the
necessary showing.

Accordingly, it is recommended that the petition for writ
of habeas corpus be denied with respect to this claim.

Consonant with the foregoing, it is recommended that
petitioner's writ of habeas corpus be denied in its entirety.


UNITED STATES MAGISTRATE


Either party may file written objections to these findings
and recommendations within ten days of receipt. Failure to
file within ten days shall result in waiver of appeal. See
Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir.
1980).

AO 450 (Rev. 5/85)   Judgment in a Civil Case   ⊕

# United States District Court

_____ DISTRICT OF __MASSACHUSETTS__ _____

JOSEPH A. PULEIO

## JUDGMENT IN A CIVIL CASE

V.

GEORGE A. VOSE, JR.

CASE NUMBER: 85-2023-S

**DOCKETED**

☐ **Jury Verdict.** This action came before the Court for a trial by jury.  The issues have been tried and the jury has rendered its verdict.

☐ **Decision by Court.** This action came to trial or hearing before the Court.   The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED pursuant to the Court's Order on Petitioner's
Objections to Recommendation of the Magistrate dated December 11, 1986,
that the petition in the above entitled case is hereby DISMISSED.

ATTACHMENT

"3"

DEC 1 1 1986

_____
*Date*

_____
*Clerk*

_____
*(By) Deputy Clerk*

On the evening of June 25, 1980, the defendant and his brother, Richard Puleio, arrived at the Pinderosa Bar in Amesbury and found Bonnie Eaton, Richard Puleio's girl friend, socializing with Wayne Subatch and two of Subatch's friends. The defendant spent about thirty to forty-five minutes at the bar and, in that time, had two altercations, during one of which he threatened to "blow [that person's]...head right of[f]." Subatch, his friends, and Eaton left the bar, followed closely by the defendant and his brother. An argument ensued, with the defendant and his brother on one side and Subatch on the other. The defendant pulled out a gun, aimed it at Subatch's head, and fired one shot. Subatch ducked. Sharon Ann Snow was standing behind Subatch, and the defendant's bullet struck her in the chest and killed her. The defendant fled from the scene, and the next night a Virginia State trooper arrested him as he was traveling south on Interstate Highway 95. The defendant had shaved his beard and had repainted his motorcycle, and the motorcycle bore a registration plate not assigned to him by the Registry of Motor Vehicles.

The petitioner raises three legal issues: (1) failure of the trial judge correctly to define malice in his instructions to the jury; (2) deprivation of the right of confrontation because of inability to conduct a meaningful cross-examination of Wayne Subatch; and (3) deprivation of the right of confrontation because of the admission of the hearsay testimony of Bonnie Eaton.

1.   Jury Instructions

The trial judge did not specifically define malice, but did instruct the jury that the government had to prove a specific intention to kill Subatch. He also instructed on premeditation

stitutional vice was the shifting of the burden of proof to the defendant.  The judge's instructions did not shift the burden of proof in any respect in the context of this case.

2.     Cross-examination of Subatch

The right of confrontation contained in the Sixth Amendment to the Constitution is applicable to state prosecutions.  Pointer v. Texas, 380 U.S. 400 (1965).  The right of confrontation includes the right of a meaningful cross-examination, including impeachment.  Davis v. Alaska, 415 U.S. 308 (1974).  The trial judge would not permit petitioner's counsel to impeach Subatch by convictions wherein it did not appear that Subatch was represented by counsel.  There were other convictions which were available to petitioner's counsel and he did not even use all those.  In these circumstances, I find and rule that there was an opportunity for meaningful cross-examination and no deprivation of the right of confrontation.

3.     Statement of Bonnie Eaton

Jackie LaMothe, the bartender of the Pinderosa Bar, was permitted to testify that minutes after the shooting she asked the crowd, "Who fired the shot?"  Bonnie Eaton replied, "Joe Puleio."  It was presumably admitted under the well-recognized

- 4 -

### Motion for Stay of Federal Proceedings

As this memorandum was nearing completion, I received the petitioner's motion for stay of federal proceedings. This motion is based on the Supreme Court's decision in Murray v. Currier, supra. Petitioner wishes to return once again to to state court raise the objection that ineffective assistance of counsel established sufficient cause to avoid the contemporary objection rule of Wainwright v. Sykes, supra. I have made an alternative holding, however, supra, pp. 3-4, on the merits that the trial court's instruction violated no constitutional right of the petitioner on the facts of this case. Even if the petitioner were to overcome the contemporary objection rule, he would not prevail. There is no point in going through any further exercises in this case.

### Conclusion

The recommendation of the magistrate is adopted. The petition is DISMISSED on the merits.

United States District Judge